IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL HARNEY** and **OZZIE GILBERT**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**ASSOCIATED MATERIALS, LLC, dba AMI**, a Delaware limited liability company, and **ASSOCIATED MATERIALS INCORPORATED, dba AMI**, a Delaware corporation,<br><br>Defendants. | Case No. 3:16-cv-1587-SI<br><br>**OPINION AND ORDER** |

Robert W. Wilkinson and Anthony T. Blake, BALL JANIK, LLP, 101 SW Main Street, Suite 1100, Portland, OR 97204; Alex M. Nelson and Michael J. Lowder, BENSON, KERRANE, STORZ & NELSON, PC, 110 N. Rubey Drive, Suite 2000, Golden, CO 80403. Of Attorneys for Plaintiffs.

Darin M. Sands, LANE POWELL, PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204; Michael K. Farrell, Sam A. Camardo, and Daniel M. Kavouras, BAKER HOSTETLER LLP, 127 Public Square Suite 2000, Cleveland, OH 44114. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Michael Harney and Ozzie Gilbert (collectively, "Plaintiffs"), bring this putative class action against Defendants Associated Materials, LLC, dba AMI Building Products, Inc., and Associated Materials Incorporated, dba AMI Building Products, dba Gentek Building Products, Inc. (collectively, "AMI" or "Defendants"). Both Defendants manufacture vinyl siding. Plaintiffs allege that Defendants' siding on Plaintiffs' homes deformed under normal conditions, resulting in damage to Plaintiffs' homes. Before the Court is AMI's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, AMI's motion is granted in part and denied in part.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the

plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

As alleged in the Second Amended Complaint, AMI sells and distributes vinyl siding ("the Siding") throughout the United States for installation on homes and commercial buildings. Named Plaintiff Michael Harney is a resident of Beaverton, Oregon and lived in a house clad with AMI's vinyl siding. While preparing his house for sale, Mr. Harney found blistering and distortion problems with the Siding. Mr. Harney completed a Warranty Inquiry Packet to make a claim for repair, refinishing, or replacement of the siding. AMI denied Mr. Harney's claim stating, "[o]ur findings conclude that your particular concern is not the result of a manufacturing defect covered by the warranty." ECF 52 ¶ 11. In discussions with AMI over the denial of his warranty claim, AMI told Mr. Harney that a representative visited his property to inspect it before denying the claim. Later, AMI informed Mr. Harney that AMI had only inspected his home using Google Earth satellite imagery and had denied his claim because the siding had "sun solarization," which AMI stated was not covered under its express warranty. "Sun solarization," however, was not an expressly identified exclusion in the then-applicable AMI warranty. Mr. Harney replaced the siding himself and, in the process, discovered that the building paper beneath the Siding was also damaged and needed to be replaced.

PAGE 3 – OPINION AND ORDER

Named Plaintiff Ozzie Gilbert owns a home in Austell, Georgia. Ms. Gilbert purchased AMI's vinyl siding from a dealer or contractor engaged in door-to-door sales on AMI's behalf. She had the siding installed in 2000. In 2014, Ms. Gilbert noticed warping, deformation, and buckling of a significant portion of the siding. Ms. Gilbert submitted a warranty claim to AMI. AMI denied Ms. Gilbert's without inspecting her home to determine the cause of the damage. Ms. Gilbert's siding has not been repaired or replaced.

AMI's "Vinyl Siding Lifetime Limited Warranty" (the "Warranty") in effect in 2003 was for the natural life of an original owner, or for 50 years if the property were sold. The Warranty purported to exclude "damages or material failure including, but not limited to, normal weathering, oxidation, Acts of God, fire, flood, impact from foreign objects, chemical pollutants, mildew, structural defects, negligent maintenance or abuse." *Id.* ¶ 4. The Warranty also provided that "[i]f [AMI] determines that a claim is valid in accordance with the terms of this Warranty, [AMI] agrees, at its sole option, to repair, refinish, or replace only the defective siding panels and assume 100% of the cost of material and labor to the Property Owner." *Id.* On the back of the Warranty, which is contained on a pamphlet, AMI also states that its vinyl siding is "no ordinary siding. It is the result of years of intensive research and development, giving you a vinyl siding of the highest standards." *Id.* ¶ 23.

Plaintiffs allege that AMI has received numerous warranty claims alleging a manufacturing or design defect in the Siding. Rather than notify consumers about the defects, Plaintiffs claim, AMI has "intentionally embarked on a campaign to blame any distortion in the Siding on 'external' or 'unusual heat sources.'" *Id.* ¶ 32. AMI also appears to apply its current warranty language, terms, and exclusions to any and all claims, regardless of the specific terms of the warranty issued to the owner making the warranty claims.

**DISCUSSION**

Plaintiffs bring five claims for relief against AMI: (1) breach of express warranty; (2) breach of implied warranties; (3) unjust enrichment; (4) unlawful trade practices; and (5) declaratory judgment and injunctive relief. AMI moves to dismiss each of these claims.

**A. Identification of a Defect**

AMI argues that Plaintiffs have alleged only injury and have failed to identify either a design or engineering defect. Because each of Plaintiffs' claims rest upon an allegation that AMI's Siding was defective, AMI argues, insufficient description of the precise defect renders each of Plaintiffs' claims insufficient under Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiffs respond that to state a claim for breach of warranty, Plaintiffs need allege only that the product did not perform as promised or, in the case of implied warranty, failed of its essential purpose. Plaintiffs further argue that they have sufficiently alleged a defect in AMI's siding. Plaintiffs are correct.

Defendants rely on *Yagman v. General Motors Co.*, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014), to support their argument that Plaintiffs must identify a specific defect to sufficiently state a claim for breach of warranty. In *Yagman*, the court held that the fact that a car engine stopped working gave rise to a reasonable inference of a manufacturing defect, but fell "slightly short" of alleging that a manufacturing defect was a plausible cause of the injury. That the engine stopped working, the court explained, was a symptom of a defect and not the defect itself. *Id.* at *3. When challenging a "less complex component," however, plaintiffs need not "plead the mechanical details" of a defect. *DeCoteau v. FCA US LLC*, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (quoting *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011) (quotation marks omitted).

In alleging that the Siding became distorted and deformed, and that siding should not become distorted and deformed when exposed to normal weather conditions, Plaintiffs have sufficiently alleged that AMI's product is defective. In *Force v. Wright Medical Technology., Inc.*, the court granted a motion to dismiss because "[t]he Complaint fail[ed] to allege any specifics about the alleged defects, how the product deviated from requirements, what about it was dangerous, or what about the warnings were inadequate." 2012 WL 4897165, at *2 (W.D. Wash. Oct. 15, 2012). Defendants also point to *Corwin v. Connecticut Valley Arms, Inc.*, in which the court granted a motion to dismiss a complaint about an allegedly defective bullet because the plaintiff made "no factual allegations that detail how the bullet was defective . . . whether because of the bullet's physical properties, its inherent design, or otherwise." 74 F. Supp. 3d 883, 889 (N.D. Ill. 2014*)*. In *Corwin*, however, the plaintiffs were alleging that the bullet's defective design caused pressure in the gun barrel to increase, which in turn resulted in an explosion that injured the plaintiff. The alleged defect was thus part of a more complex system that gave rise to the injury, and plaintiffs had not sufficiently alleged whether the defect was with the gun or the bullet. Here, the distorted siding is not merely an injury, but evidence of the defect itself. Plaintiffs have alleged specifically that the Siding is prone to shrinkage at the joints, that it blisters and flakes, and that these qualities cause it to deviate from the basic requirements of vinyl siding and AMI's express warranty that the Siding will not become damaged under normal weather conditions. To require a sophisticated statement of the mechanical or chemical failings of the Siding would place a prohibitively high burden on plaintiffs at the pleading stage, and would go beyond the requirements of Rule 8(a).

Moreover, Plaintiffs have alleged that AMI made certain assurances about its product, including in the Warranty, "that the Siding shall be free from blistering, corroding, flaking, and

peeling and is suitable for use as an exterior home product." Plaintiffs allege that the siding does not comport with these assurances and "experiences blistering, excessive shrinkage and expansion and long-term material degradation." Plaintiffs further claim that AMI breached the Warranty by failing to repair, refinish, and replace Plaintiffs' defective siding, despite the fact that Plaintiffs had valid claims under the Warranty. Plaintiffs specifically dispute that the nonconformities in the Siding on their properties was caused by "unusual heat sources." For the purposes of a claim of breach of express warranty, these allegations sufficiently allege that the Siding is defective.

**B. Breach of Implied Warranty**

Plaintiffs claim that the Siding failed its essential purpose and that AMI breached the implied warranties of fitness and merchantability. AMI moves to dismiss this claim on the bases that Plaintiff Harney is not in privity with AMI and Plaintiff Gilbert's implied warranty claim is time-barred under Georgia law.

**1. Plaintiff Harney**

Oregon does not require privity for a consumer who has suffered property damage to recover under an implied warranty claim. *See McFadden v. Dryvit Sys., Inc.*, 2004 WL 2278542, at *8 (D. Or. Oct. 8, 2004), *report and recommendation adopted*, 2004 WL 2852554 (D. Or. Dec. 10, 2004) (concluding after a review of Oregon law "that in Oregon, a plaintiff within the normal distribution chain may recover property damages from a seller with whom he is not in privity based on breach of an implied warranty"). Although the Second Amended Complaint does not specifically allege how and when Plaintiff Harney came to own the AMI Siding, it does state that his previous home, the Moon Valley Terrace Residence, had AMI Siding that he observed to be blistering and distorting when he prepared the home for sale in Summer 2015. Plaintiff Harney is therefore in the normal distribution chain of AMI's products. The property

PAGE 7 – OPINION AND ORDER

damage that the court found to be recoverable in *McFadden* is similar to the damage described here: faulty siding resulting in dry rot to plaintiffs' pre-existing home. *Id.* at *4. Plaintiffs further allege that "[t]he building paper beneath Mr. Harney's distorted siding was also damaged, and needed to be replaced." ECF 52 ¶ 14. Just as the dry rot in *McFadden* was held to be property damage, so too is damage to the building paper on Plaintiff Harney's previous home. Plaintiffs have thus sufficiently alleged the existence of property damage.[1]

### 2. Plaintiff Gilbert

Georgia applies a four-year statute of limitations to claims of breach of implied warranty. *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013). Plaintiffs allege that Gilbert's Siding was "installed on . . . or about May 16, 2000." ECF 52 ¶ 15. The four-year statute of limitations has thus elapsed. Plaintiff Gilbert argues that the statute of limitations should be tolled due to fraudulent concealment, as provided by Georgia Code § 9-3-96. To toll a statute of limitations when a plaintiff has been fraudulently "debarred or deterred from bringing an action," *Id.*, however, Plaintiff must allege "concealment of the cause of action . . . by positive affirmative act and not by mere silence." *Paws Holdings LLC v. Daikin Indus., Ltd.*, 2017 WL 706624, at *15 (S.D. Ga. Feb. 22, 2016). Plaintiff Gilbert alleges that she was "impeded from discovering the defective nature of the Siding because of AMI's affirmative acts of concealment regarding the inherent defects of its Siding[.]" ECF 52 ¶ 38. Plaintiff Gilbert does not, however, point to any particular communication or act of concealment on the part of AMI. Such an allegation, therefore, is more legal conclusion than factual allegation and is insufficient to support an inference that the tolling exception for fraudulent concealment applies to Plaintiff

---

[1] Whether the allegedly defective Siding caused damage to the underlying building paper is a matter best addressed at summary judgment after discovery.

Gilbert's claim. Because Plaintiff Gilbert has not alleged sufficient facts to demonstrate that the statute of limitation should be tolled, her claim for breach of implied warranty is time-barred.

## C. Unjust Enrichment

AMI argues that Plaintiffs cannot maintain an unjust enrichment claim because the Warranty bars such a claim, because that claim is time-barred, and because Plaintiffs conferred no benefit on AMI. Because the Court agrees that the Warranty bars Plaintiffs' unjust enrichment claim, and that it is time-barred, the Court does not reach AMI's third argument.

Unjust enrichment is a "quasi-contract" claim. *Wilson v. Gutierrez*, 261 Or. App. 410, 414 (2014). It is a remedial device that "the law affords where no enforceable contract exists." *Confederated Tribes of Warm Springs Reservation of Oregon v. Ambac Assur. Corp.,* 2010 WL 4875657, at *6 (D. Or. Nov. 17, 2010). In Oregon, a party may plead alternative claims for breach of both an express contract and a "quasi-contract." If an enforceable contract does exist, however, that contract will control because "[u]ltimately ... there cannot be a valid legally enforceable contract and an implied contract covering the same services." *Kashmir v. Patterson*, 43 Or. App. 45, 48 (1979); *see also Goldstein v. Home Depot U.S.A., Inc.,* 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009) ("Under Georgia law, unjust enrichment is only available in the absence of an enforceable contract").

The Court finds persuasive the analysis in *In re Atlas Roofing Corp. Chalet Shingle Prod. Liability. Litigation*, regarding unjust enrichment claims pleaded with a breach of warranty claim:

> Although the Plaintiffs allege that the Defendant has not honored warranty claims filed directly with the Defendant, and that the warranty contains unenforceable *limitations*, they never deny the general validity of the warranty. In fact, their breach of express warranty claim is predicated on the enforceability of this warranty. The Plaintiffs then argue that they are asserting the unjust enrichment claim in the alternative. However, "a plaintiff may not

> plead an unjust enrichment claim in the alternative to a claim for breach of contract when it is undisputed ... that a valid contract exists." Here, as noted, both parties acknowledge that there is an express warranty. Finally, the Plaintiffs argue that they ought to be allowed to pursue their unjust enrichment claim since they may not prevail on their contract claim. But the Plaintiffs may only prevail on an unjust enrichment claim in the absence of a contract, not just in the absence of a successful contract *claim*. Thus, the Plaintiffs' unjust enrichment claim should be dismissed.

2014 WL 3360233, at *3 (N.D. Ga. July 9, 2014) (citations and footnotes omitted) (emphasis in original).

Neither party disputes that the express warranty that Plaintiffs have pleaded and attached to their Second Amended Complaint is a legally enforceable contract. Because there is a legally enforceable contract in the form of an express warranty, and because both Oregon and Georgia do not allow unjust enrichment claims to be pleaded as an alternate theory of recovery when a valid contract exists, Plaintiffs' unjust enrichment claim cannot survive.

AMI also argues that Plaintiffs' unjust enrichment claims are time-barred. Oregon's statute of limitations for unjust enrichment claims is six years, and accrues when the benefit is received. *See Commc'n Mgmt. Servs., LLC v. Qwest Corp.*, 67 F. Supp. 3d 1159, 1176 (D. Or. 2014). Georgia's statute of limitations for unjust enrichment claims is four years, and accrues "on the date that suit on the claim can first be brought." *Garrison v. Jackson Nat. Life Ins. Co.*, 908 F. Supp. 2d 1293, 1305 (N.D. Ga. 2012). Plaintiffs argue that the statute of limitations should be tolled due to AMI's fraudulent concealment. As explained above, however, Plaintiffs plead no facts giving rise to a reasonable inference of affirmative concealment of the Siding's defects on the part of the Defendants. Because the Siding for Plaintiff Harney's home was purchased in 2002, and Plaintiff Gilbert bought the Siding in 2000, both of their claims for unjust enrichment are, in addition to being barred due to the existence of an enforceable contract, time-barred.

### D. Unlawful Trade Practices

Plaintiffs claim that AMI's alleged misrepresentations in the Warranty and its marketing materials concerning the high quality of the Siding, as well as its failure to disclose that the Siding was defective, constitute unlawful trade practices in violation of Or. Rev. Stat. ("ORS") § 646.608(1)(e),(g), and (t) as well as Ga. Code Ann. § 10-1-372. AMI argues that Plaintiffs' unlawful trade practices claim must be dismissed because Plaintiffs do not adequately allege that they detrimentally relied on AMI's alleged unlawful trade practices, and AMI's alleged misrepresentations are non-actionable puffery. Plaintiffs respond that they have sufficiently pleaded reliance as to the affirmative misrepresentations, and that reliance is not required for a failure to disclose claim.

#### 1. Affirmative Misrepresentations

##### a. Reliance

To prevail on a claim of affirmative misrepresentation under ORS § 646.608(1)(e) (misrepresentations of characteristics, uses, benefits) and (g) (misrepresentations of quality, standard, or grade), a plaintiff must prove: (1) a violation of ORS 646.608(1); (2) causation ("as a result of"); and (3) damage ("ascertainable loss"). *Feitler v. The Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000). "Where, as here, the alleged violations are affirmative misrepresentations, the causal element requires proof of reliance-in-fact by the consumer." *Id.* at 708 (finding that in order for the plaintiff to prevail on his UTPA claim, he had to prove not only that the seller had made false statements, but also that the plaintiff had relied on those statements); *see also Sanders v. Francis,* 277 Or. 593, 598 (1977) (holding that factual reliance is essential "when plaintiff claims to have acted on a seller's express representations"). Georgia Code Ann. § 10-1-372 also requires a plaintiff to show reliance when bringing a claim of affirmative misrepresentation. *Willingham v. Glob. Payments, Inc.,* 2013 WL 440702, at *16

PAGE 11 – OPINION AND ORDER

(N.D. Ga. Feb. 5, 2013) (dismissing the plaintiffs' § 10-1-372 claim because "[p]laintiffs have not pled that they read, relied upon and, thus, were harmed by Defendant's representations"). Thus, a plaintiff under either Oregon or Georgia law must plead that they were exposed to and relied upon a defendant's alleged misrepresentations.

Plaintiffs allege that AMI "through affirmative statements" expressly represented or implied that the Siding had the following approvals, characteristics, uses, benefits, qualities, grade and standards:

> The Siding did not have the inherent problems outlined above and elsewhere herein; the Siding was of the highest standards; the Siding would continue to serve its purpose under normal conditions for 50 years; that its formula "prevents ultraviolet degradation, so even the hot summer sun won't damage your siding's beautiful surface," and that the vinyl stabilizers in the siding "help to prevent heat degradation during the manufacturing process and after installation."

ECF 52 ¶ 91. Plaintiffs argue that they have sufficiently pleaded reliance by indicating they "reasonably relied on AMI's representations and failures to disclose, to their detriment[,]" that they "rel[ied] upon the quality assurances that came with [AMI's] Siding[,]" and that they relied upon "the skill and judgment" of AMI when manufacturing. Plaintiffs, however, do not allege that they decided to purchase AMI's siding as a result of those misrepresentations.

Plaintiffs rely on a theory of "third-party reliance." *See Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166 (1982). In *Raudebaugh,* the plaintiffs purchased a home that had been inspected by a pest control company, the defendants, at the request of the seller, and the defendants reported the home to be clear of infestations. *Id*. at 169. The defendants' representation that the house was free of pests was made in a Clearance Statement that was provided to the plaintiffs through the plaintiffs' realtor. *Id*. The plaintiffs alleged that they bought

the house in reliance on the statement that it was free of infestation. *Id*. The Oregon Court of Appeals held that the plaintiffs validly relied on the Clearance Statement as a third-party. *Id*.

In the pending case, however, Plaintiffs have not pleaded facts that allege a third-party reliance theory. Plaintiffs have not pleaded factual allegations that they relied on AMI's representations or that such representations were communicated to them *before purchasing* the Siding or the house, as the plaintiffs did in *Raudebaugh.* Instead, Plaintiffs claim in a conclusory fashion that they "reasonably relied on AMI's representations and failures to disclose, to their detriment[,]" but plead no factual allegations to support this legal conclusion. Plaintiff Harney has not alleged that he relied on any of AMI's representations or that someone else communicated those representations to him *before purchasing*, or even that Harney relied on someone else's reliance. Although Plaintiff Gilbert does allege that she purchased the Siding from a door-to-door salesman, suggesting she may have relied on certain representations made by that salesman, she has not alleged what specific representations were made to her and that she in fact relied upon them. Rather, Plaintiffs allege only that AMI's marketing materials contained the representations, but not that either of the named Plaintiffs viewed or heard these representations before purchasing the Siding. Plaintiffs, thus, have not pleaded reliance on AMI's statements sufficient to state a claim for affirmative misrepresentation.[2]

---

[2] Defendants also argue that Plaintiffs' statutory claims sound in fraud, and therefore must meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Defendants arguments that Plaintiffs have failed to meet the Rule 9(b) pleading standards, however, are essentially identical to their arguments that Plaintiffs have failed to plead reliance. Because Plaintiffs have not sufficiently pleaded reliance, and thus have not met the standard pleading requirements, this Court need not decide whether the heightened pleading standards of Rule 9(b) apply to Plaintiffs' unlawful trade practices claims.

### b. Puffery

AMI argues in the alternative that if the Court finds that Plaintiffs relied on AMI's statements, then those statements should be considered non-actionable puffery. Plaintiffs respond that whether statements are puffery is often a question of fact for the jury. As discussed above, Plaintiffs have not alleged facts demonstrating any reliance on AMI's statements before purchasing or owning the Siding. The Court need therefore not determine whether AMI's statements are non-actionable puffery. Plaintiffs are correct, however, in noting that in both Georgia and Oregon, whether a party's statements are non-actionable puffery is often a question of fact for the jury. *See Peterson v. Auvel*, 275 Or. 633, 639 (1976); *Edel v. Southtowne Motors of Newnan II, Inc.*, 338 Ga. App. 376, 380 (2016), *reconsideration dismissed* (July 28, 2016).

### 2. Failure to Disclose

Under ORS § 646.608(1)(t), it is an unlawful trade practice to "fail[] to disclose any known material defect or material nonconformity" at the time that the goods are tendered. Plaintiffs allege that Defendants violated the Oregon and Georgia unfair trade practices laws because:

> (1) The Siding did not have the approvals, characteristics, uses, benefits, grade, qualities, and standards represented by AMI,
>
> (2) The Siding was not of a particular standard, quality, or grade, and
>
> (3) AMI knew, or in the exercise of reasonable care should have known, that the Siding contained material defects and AMI failed to disclose such defects.

ECF 52 ¶ 93. AMI argues that Plaintiffs have failed to plead reliance or causation to support their claim. Plaintiffs respond that reliance is not an element of a failure to disclose claim.

Under Oregon's Unlawful Trade Practices Act, "reliance is not always required to satisfy the 'result of' language in ORS § 646.638(1)." *Sanders,* 277 Or. at 598 ("when the representation

PAGE 14 – OPINION AND ORDER

takes the form of a 'failure to disclose'. . . as in this case, it would be artificial to require a pleading that plaintiff had 'relied' on that non-disclosure."). As noted above, however, to prevail on an ORS § 646.638(1) claim, a plaintiff must prove: (1) a violation of ORS § 646.608(1); (2) causation ("as a result of"); and (3) damage ("ascertainable loss"). Plaintiffs must allege that AMI's omissions caused ascertainable loss. *See Weigel v. Ron Tonkin Chevrolet Co.*, 298 Ore. 127, 135-36 (1984) (noting that the ascertainable loss requirement should be "viewed broadly" and that losses too small to be cognizable under the common law nevertheless suffice for purposes of the ORS § 646.608(1)). Plaintiffs allege that "[a]s a direct and proximate result of AMI's violations, the Named Plaintiffs have suffered ascertainable losses of money and property." ECF 52 ¶ 97. Plaintiffs describe the ascertainable losses of money and property as damage to the siding (and building paper for Mr. Harney), and the Court may reasonably infer that AMI's alleged omissions caused damage to Plaintiffs.

Neither party cited, nor could the Court find, any case requiring a plaintiff to have relied on an omission by the defendant to state a claim under Ga. Code Ann. § 10-1-372. Given the similarities between Georgia and Oregon unlawful trade practices statutes described above, Plaintiffs need not plead reliance in a failure to disclose theory for claims brought under ORS § 646.638(1) or Ga. Code Ann. § 10-1-372. Plaintiffs, thus, have sufficiently alleged causation under both laws.[3]

## E. Declaratory Judgment and Injunctive Relief

Plaintiffs ask the Court to declare that:

---

[3] Defendants also argue that Plaintiff Gilbert's Georgia unfair trade practices claim fails because she is seeking damages, but only injunctive relief is available under Ga. Code Ann. § 10-1-372. Plaintiffs, however, seek injunctive relief, requiring AMI to modify its warranty claims process. That is sufficient at the pleading stage.

> a. The Siding has defects which cause it to fail, resulting in damage to property and the necessity of the removal and replacement of the Siding;
>
> b. The Siding has a defect in workmanship and material that causes failures;
>
> c. AMI knew of the defects in its Siding and that the limitations contained in its purported limited warranties are unenforceable;
>
> d. AMI shall re-audit and reassess all prior warranty claims on their Siding, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and
>
> e. AMI shall establish an inspection program and protocol to be communicated to Class members that will require AMI to inspect, upon request, a Class Member's structure to determine whether a Siding failure is manifest.

ECF 52 ¶ 100. AMI argues that declaratory judgement and injunctive relief are remedies, not claims, and should be dismissed because Plaintiffs assert no legal claims or factual allegations to support their entitlement to these remedies. Plaintiffs respond that the Declaratory Judgment Act grants the federal courts discretion to declare rights and other legal obligations. Both parties are correct.

"Under the Declaratory Judgment Act, a district court may 'declare the rights and other legal relations of any interested party seeking such declaration.'" *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011) (quoting 28 U.S.C. § 2201(a)). "[T]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief." *See Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). Here, Plaintiffs have stated claims for breach of express and implied warranty, as well as for unlawful trade practices under Georgia and Oregon law. They have thus stated claims that exist independently of the claim for declaratory judgment and injunctive relief. AMI's motion to dismiss Plaintiffs'

claim for declaratory judgment and injunctive relief is denied. The Court agrees, however, that Plaintiffs' requests for declaratory and injunctive relief are remedies for the Court to determine, and not independent claims. They should be pleaded as such in any future amended pleading.

**CONCLUSION**

Defendants' Motion to Dismiss for failure to state a claim (ECF 57) is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted as to Plaintiff Gilbert's implied warranty claim, and both Plaintiffs' unjust enrichment claims, which are dismissed with prejudice. Defendants' motion is also granted as to Plaintiffs' unlawful trade practices claims based on affirmative misrepresentation, which are dismissed without prejudice. Defendants' motion is denied as to all other claims, including Plaintiffs' unlawful trade practices claims based on Defendants' failure to disclose. Plaintiffs may file an amended pleading within two weeks from the date of this Opinion and Order if Plaintiffs believe that additional allegations will cure the identified deficiencies.

**IT IS SO ORDERED**.

DATED this 18th day of January, 2018.

/s/ Michael H. Simon  
Michael H. Simon  
United States District Judge